TOWN OF CLARKSTOWN, Plaintiff,

v.

The NORTH RIVER INSURANCE COMPANY, Defendant.

No. 90 Civ. 1166 (VLB).

United States District Court,
S.D. New York.

March 4, 1993.

Donald G. Nichol, Jacobowitz & Gubitz, Walden, NY, for plaintiff.

Mark D. Lefkowitz, Klotz & McCann, Hawthorne, NJ, for defendant Insurer.

Village Green Properties, Inc., NPS Properties Group, Bryan, Levitin, Franzino & Rosenberg, New York City.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case arises out of default in connection with a condominium construction project. The defendant North River Insurance Company (the "insurer") was surety on a bond given to the plaintiff Town of Clarkstown (the "Town") to assure proper fulfillment of land use requirements. By memorandum order dated October 2, 1992,[1] I granted summary judgment to the Town finding the insurer liable on the surety performance bond up to its stated maximum of $125,000. I determined that the insurer as surety was entitled to notice of the default of its principal, but that the delay would not have resulted in a loss less than the maximum limit of the bond ($125,000). I concluded, however, that the insurer could not be charged with interest for periods prior to its receipt of notice of the default of the principal, and allowed interest only for time elapsed after the notice date of November 16, 1989.

In the memorandum order of October 2, 1992 I directed the Town to submit a proposed judgment including interest only from the date I found notice had been given to the insurer as surety, and after deducting applicable escrows. In the same memorandum order, I granted the insurer leave to file a third party complaint against the principal on the bond as to which it is surety.[2]

The insurer has raised two objections to the Town's proposed judgment for $125,000 plus interest:

(1) that the proposed judgment fails to deduct escrow funds received by the Town in the amount of $39,600; and

(2) that the October 2, 1992 memorandum order contains no certificate pursuant to Fed. R.Civ.P. 54(b) directing that final judgment be entered as to this portion of the case on the basis of a finding of no just reason for delay.

### II

■ It is undisputed that the Town retained an escrow deposit of $39,600 in connection with the default on the construction project involved in this case. Relying on various post-default hearsay statements in documents and depositions concerning the purposes of the escrow, the Town contends that this escrow deposit is unavailable as a setoff against the $125,000 for which the insurer is responsible under the surety bond. The Town, however, has failed to submit any initiating documents such as agreements or correspondence creating, accompanying or defining the escrow which would delineate its purpose, limits, use or applicability.

■ The Town, not the insurer, negotiated for and obtained the escrow, and necessarily the Town had initial possession of any documents created in connection with the deposit of the escrow. The Town has provided no explanation to support the plausibility of the creation of a $39,600 escrow without any accompanying documents,[3] nor has it sug-

---

1. 803 F.Supp. 827 (S.D.N.Y.1992).

2. Also pending is the insurer's counterclaim, based on delay in notice to it by the Town of the principal's default on the bond. The thrust of their counterclaim is effectively mooted by the findings in my memorandum order of October 2, 1992:

    (a) that there was no prejudice to the insurer as a result of this delay in notice, since the loss to the Town even after deducting any effect of the delay would in any event have exceeded the maximum amount of the bond ($125,000), and

    (b) that interest should be denied the Town which would be allocable to periods prior to

notice to the insurer as surety on the performance bond.

3. Absence of customarily present documents can support an adverse inference or cause a claim not to make sense. See generally *Alan Skop, Inc. v. Benjamin Moore, Inc.*, 909 F.2d 59 (2d Cir. 1990); *Eastern Air Lines v. Air Line Pilots Ass'n*, 861 F.2d 1546, 1552 (11th Cir.1988) (purported oral collective bargaining agreement provisions); *Goldstick v. ICM Realty*, 788 F.2d 456, 466 (7th Cir.1986); Braunstein, *Remedy, Reason and the Statute of Frauds*, 1989 Utah L.Rev. 383.

gested what happened to any such documents, if they existed. Absent such an explanation, the Town's purely hearsay evidence as to the nature of the escrow does not make sense.[4] Accordingly I draw an adverse inference against the Town with regard to the scope, purpose and effect of the escrow.[5]

The insurer has shown at the least existence of a genuine issue of material fact with respect to its entitlement to claim the escrow as an offset. No trial on that issue is required, however, since the Town made no objection to the procedure set forth in the memorandum order of October 2, 1992 that the applicability of escrows be determined as part of the settlement of the judgment.[6]

### III

The insurer asserts:

(a) that an enforceable judgment which does not dispose of the entire case cannot be entered without findings pursuant to Fed.R.Civ.P. 54(b);

(b) that the memorandum order of October 2, 1992 does not explicitly refer to that Rule, and

(c) that there remains pending the insurer's counterclaim against the Town for failure to provide notice of the principal's default, and the insurer's third party complaint against the principal.

The insurer argues that a Rule 54(b) certificate would be an amendment of the October 2, 1992 memorandum order which must meet the requirements of Fed.R.Civ.P. 60. This is incorrect, inasmuch as the October 2, 1992 memorandum order was explicitly interlocutory: it permitted filing a third party complaint (an interlocutory step) and directed that plaintiff submit a proposed judgment. A Rule 54(b) certificate, if appropriate, would implement rather than amend the October 2, 1992 memorandum order.

A Rule 54(b) certificate is appropriate with respect to the judgment the Town was directed to submit in the October 2, 1992 memorandum order. I expect that judgment will reflect my ruling herein as to the escrow payments received by the Town. As noted *supra*, the insurer's counterclaim against the Town based on lack of notice was effectively mooted by the October 2, 1992 memorandum order. That memorandum order took delayed notice into account in denying interest to the Town for periods prior to the date of notice of the principal's default to the insurer as surety; it was also determined in that memorandum order that the amount of the bond would have been exceeded by the damage incurred by the Town even had the insurer had more timely notice of the default.

The insurer's third party complaint as surety against the principal was not authorized until the entry of the October 2, 1992 decision; it does not directly affect the dispute between the insurer and the Town.

I direct the entry of judgment as to the Town's claims against the North River Insurance Company and make an express determination that there is no just reason for delay. Plaintiff is directed to submit on notice such a judgment in the form of its draft dated February 1, 1993 *modified in the following* respects: the $39,600 escrow is to be deducted from the principal amount; pre-judgment interest is to be recalculated up to the date such revised judgment is submitted to me for signature; this memorandum order constitutes an Fed.R.Civ.P. 54(b) certificate and the judgment shall reflect this Rule 54(b) determination.

SO ORDERED.

---

**4.** See *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**5.** See generally, e.g., *United States v. Nichols*, 912 F.2d 598, 601 (2d Cir.1990) (related inference for not calling knowledgeable witness controlled by a party); *United States v. Ariza-Ibarra*, 651 F.2d 2 (1st Cir.), *cert. denied* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); 2 Wig-more, *Evidence* § 285 (Chadbourne rev. ed. 1979).

**6.** The memorandum order directed the Town "to submit a proposed judgment on notice including interest accruing from November 16, 1989, crediting [the insurer] with any applicable escrow funds."